**UNITED STATES of America,**

v.

**Lee A. GLENN, Defendant.**

**No. 02 CR 0168.**

United States District Court,
W.D. New York.

July 2, 2003.

---

Timothy W. Hoover, Federal Public Defender's Office, Buffalo, NY, for Defendant.

Michael DiGiacomo, Assistant United States Attorney, Buffalo, NY, for Plaintiff.

## DECISION AND ORDER

SKRETNY, District Judge.

1. On July 7, 2003, the Clerk of the Court entered a Report and Recommendation on Defendant's Motion to Suppress Evidence issued by the Honorable Hugh B. Scott, United States Magistrate Judge.

2. On July 17, 2003, the Government filed Objections to Judge Scott's Report and Recommendation. On October 18, 2003, Defendant filed a memorandum in opposition to the Government's Objections. This Court deemed the matter submitted as of August 26, 2003.

3. This Court has carefully reviewed Judge Scott's Report and Recommendation, as well as considered the parties' arguments pertaining to the Government's objections thereto.

IT HEREBY IS ORDERED, that this Court accepts Judge Scott's Report and Recommendation (Docket No. 40) in its entirety, including the authorities cited and the reasons given therein.

FURTHER, that the Government's Objections to Judge Scott's Report and Recommendation (Docket No. 44) are DENIED.

FURTHER, that Defendant's Motion to Suppress Evidence (Docket No. 17) is GRANTED.

SO ORDERED.

### Report & Recommendation

SCOTT, United States Magistrate Judge.

Before the Court is the defendant's motion to suppress certain evidence and statements (Docket No. 17).[1]

### Background

Many of the operative facts in this case are undisputed. On May 14, 2002 Buffalo Police Officers Jose Colon and Jerry Guillian noticed two individuals on the front porch of 25 Bardol Street in the city of Buffalo, New York. The officers determined that the individuals -who are not defendants in this prosecution were engaged in drug trafficking. Upon investigation, the officers arrested these individuals after finding them to be in the illegal possession of drugs.

Officer Colon was familiar with an individual named Willie Brown who had resided at 25 Bardol Street. It appears that Brown had complained to the police on various occasions that individuals had been engaged in drug activity in front of his home and that he wanted these individuals

---

1. The defendant's various omnibus requests are the subject of a separate Decision & Order.

removed. (R. 9) [2] Officer Colon testified that after placing the individuals in the back of his patrol car, he went back on the porch to contact Brown to determine if Brown wished to pursue trespass charges. According to Officer Colon, both the outside door and the interior door of 25 Bardol were wide open. He did not recall whether a screen door was present.[3] In attempting to contact Brown, Officer Colon testified that, with his feet on the porch, he stuck his head across the threshold into the hallway of the home and announced "police." (R. 10). As he did this, Officer Colon stated that he was able to see into the living room of the house and observe the defendant, Lee A. Glenn, remove a gun from his waistband and place it into the cushions of the couch he was sitting on. (R. 10–12). Upon making this observation, Officer Colon immediately yelled "gun" and entered the house. (R. 13). Officer Colon conducted a pat-down on Glenn, who was then taken into custody by Officer Guillian. Officer Colon then recovered the gun from the couch cushions. (R. 13, 41, 51).

Glenn was handcuffed and placed in the patrol car of Buffalo Police Lieutenant John Rieman who had arrived at the scene. Lieutenant Rieman testified that upon placing Glenn in his patrol car, he advised Glenn of his Miranda warnings. (R. 63). According to Lieutenant Rieman, Glenn acknowledged that he understood his rights. Notwithstanding, Lieutenant Rieman testified that subsequent to being advised of his rights Glenn spontaneously stated that "it's my grandfather's gun and I was told to get rid of it. It doesn't work, you can try it." (R. 67). It appears that

Glenn is the grandson of Willie Brown and that Brown died a few days prior to the May 14, 2002 incident.

On September 4, 2002, a grand jury indictment charged Glenn with one count of unlawfully possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a).

Glenn asserts that Officer Colon's conduct constituted an illegal warrantless entry, search and arrest.

### Discussion

### Standing

As an initial matter, the government contends that Glenn lacks standing to challenge Officer Colon's entry into 25 Bardol Street. In *United States v. Fields*, 113 F.3d 313, 320 (2d Cir.1997), the Second Circuit held that "[t]o contest the validity of a search, a defendant must demonstrate that he himself exhibited an actual subjective expectation of privacy in the area searched, and that this subjective expectation is one that society is willing to accept as reasonable." The Court noted that the defendant need not actually reside at the premises and that an individual may also have a "sufficient interest in a place other than his own home so that the Fourth Amendment protects him." *Fields*, 113 F.3d. at 320 citing *Rakas v. Illinois*, 439 U.S. 128, 142, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). For instance, where a guest has permission to use an apartment, is given a key, and uses the apartment in the owner's absence, society may be prepared to recognize the guest's privacy, even though no property interest exists. *Fields*, 113 F.3d. at 320 citing *Jones v. United States*, 362

---

**2.** "(R. __)" refers to the transcript of the suppression hearing held in this matter on December 9, 2002.

**3.** The defendant asserts that a screen door was in place at the time of the incident and

that Officer Colon would have had to open the screen door to stick his head into the hallway as he testified. See the testimony of William G. Gethoeffer (R. 93–98).

U.S. 257, 259, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

In this instant case, the record reflects that Glenn was a frequent houseguest of his grandfather, Willie Brown, and Brown's girlfriend, Delilah Turner, at 25 Bardol Street. It also appears that 25 Bardol Street is a single family residence and not a multiple dwelling. Prior to Brown's death, Glenn visited three to four times a week. (See Affidavit of Lee A. Glenn attached as Exhibit A to Docket No. 19 ["the Glenn Affidavit"], at ¶ 4). At times only Brown was present, other times Brown and Turner were present. ("Glenn Affidavit" at ¶ 4). After Brown's death, Glenn continued to be a frequent guest at 25 Bardol Street. Glenn asserts that Turner asked him to "stop by and check on the house." ("Glenn Affidavit" at ¶ 5). To facilitate this, Turner gave Glenn a key to the premises, which was on Glenn's key-chain when he was arrested. ("Glenn Affidavit" at ¶ 5). Glenn asserts that he stopped by the house every day during May of 2002. ("Glenn Affidavit" at ¶ 6). He used his key to let himself in the home, including on occasions when Turner was not home. He was allowed to come and go as he pleased and to invite other persons into the house as his guests. ("Glenn Affidavit" at ¶ 6). At the time of his arrest, Glenn was present inside 25 Bardol Street with guests playing video games and getting ready for dinner. ("Glenn Affidavit" at ¶ 6). It appears that, with the exception of sleeping at 25 Bardol and keeping his possessions there, Glenn used 25 Bardol Street as if it were his own home.

The government has not refuted any of Glenn's allegations relating to the nature and extent of his use of 25 Bardol Street.

Based upon this record, the Court finds that the nature and extent of Glenn's use of 25 Bardol Street was sufficient to create a reasonable expectation of privacy, that Glenn possessed an actual subjective expectation of privacy in 25 Bardol Street and that such expectation of privacy should be countenanced under *Fields*.

Thus, the Court finds that Glenn may challenge the warrantless search of 25 Bardol Street.

**Warrantless Entry**

It is undisputed that the Officers involved did not have a warrant to enter 25 Bardol Street on May 14, 2002. The government contends that Officer Colon was justified in entering the apartment based upon an extension of the "public view" doctrine. That is, that he was able to see Glenn on the coach by sticking his head in the hallway and looking through the living room doorway. It is well-settled that if an individual knowingly exposes something to the public by way of a window or door, it is not subject to Fourth Amendment protection even if it is within the individual's home. *United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

However, the record in this case reflects that Glenn's conduct was not exposed to the public view. Based upon all of the testimony and evidence submitted, including the testimony of Officer Colon and the defendant, Glenn, the credible evidence suggests that Officer Colon could not view Glenn until he crossed the threshold of the outer door with his torso and leaned into the hallway to look around a short hallway wall and through another doorway. The Court makes no finding as to whether is was physically possible for Officer Colon to do this while maintaining his feet on the porch instead of bringing them inside the hallway. Officer's Colon body physically crossed the threshold with his body, and thus, entered the house enabling him to see in the livingroom. (R. 35). This constitutes a search which was impermissible

under the circumstances of this case.[4] In *U.S. v. Pierre*, 958 F.2d 1304 (5th Cir. 1992), the Court found that an officer sticking his head through the window of a car constituted a search. However, the Fifth Circuit held that such a search was reasonable in that case because it occurred at a border checkpoint. *Pierre*, 958 F.2d. at 1308–09. The government has offered no such extenuating or exigent circumstances in this case.[5] Nor has the government articulated any other permissible basis supporting the entry, seizure and arrest in question.

The Court finds that Officer Colon's observation of Glenn did not occur until he had impermissibly entered 25 Bardol Street without a warrant. Thus, the subsequent search, seizure and arrest were illegal. Similarly, the statements made by Glenn as a result of the seizure and arrest are also illegal.

### Conclusion

Based upon the above, it is recommended that all the evidence obtained as a result of the warrantless entry, search and seizure at 25 Bardol Street on May 14, 2002 be suppressed.

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 USC § 636(b)(1), Fed.R.Civ.P. 72(b) and WDNY Local Rule 72(a)(3).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates*, 66 F.3d 566 (2d Cir.1995); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir.1988).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See *Paterson–Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir.1988).

---

**4.** The Court also finds that the credible evidence suggests that the entryway of 25 Bardol Street included a screen door. Officer Colon testified that he could not recall whether or not a screen door existed. Pictures of the front of 25 Bardol Street taken in August of 2002 depict a screen door at the doorway. (See Defendant's Exhibit J–5). The condition of the screen door reflects that it was not recently installed and was likely already in place in May of 2002. The record does not permit the Court to determine whether or not the screen door was opened or closed on May 14, 2002.

**5.** Although Officer Colon testified that he smelled the odor of marijuana in front of the house (R. 11, 31), he did not assert that he was attempting to investigate the source of that odor when he leaned into the hallway to see into the house. Instead, Officer Colon testified that he proceeded up the porch steps to determine whether Willie Brown would be interested in pressing trespass charges. (R. 9). In any event, the odor of marijuana would not justify a warrantless entry into 25 Bardol Street based upon the circumstances articulated in this case. See *United States v. Dien*, 609 F.2d 1038 (2d Cir.1979).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72(a)(3)may result in the District Court's refusal to consider the objection.*

So ordered.