IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 22, 2009

Charles R. Fulbruge III
Clerk

No. 07-20848
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

CHARLES JAIRO SPEZZIA

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4: 07-CR-31-1

Before SMITH, STEWART and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Charles Jairo Spezzia was convicted by a jury of conspiracy to commit hostage taking, two counts of aiding and abetting hostage taking; conspiracy to harbor undocumented aliens; harboring and concealing from detection an undocumented alien; brandishing a firearm during and in relation to a crime of violence (i.e., hostage taking); and possession of an unregistered short-barrel shotgun.  He was sentenced to a total of 324 months of imprisonment and a five-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

year term of supervised release. He now seeks to appeal his conviction of one count of hostage taking.

Spezzia specifically contends on appeal that there was insufficient evidence to support the jury's verdict that he "detained" Miguel Nunez-Rodriguez (Miguel) in within the meaning of the Hostage Taking Act (HTA). See 18 U.S.C. § 1203(a). Spezzia notes that the HTA requires that an individual be confined for an appreciable period of time against his will such that the relationship with the defendant becomes non-consensual. According to Spezzia, there was no evidence presented at trial that Miguel was held against his will; Spezzia asserts that he and his cohorts adhered to the terms of a negotiated smuggling agreement (i.e., the smugglers agreed to cross Miguel into the United States in exchange for a specific fee), and that the interactions between the smugglers and Miguel was devoid of any coercive or involuntary elements.

Because Spezia failed to renew his motion for a judgment of acquittal under FED. R. CRIM. P. 29 at the close of evidence, we review his sufficiency challenge for a "manifest miscarriage of justice." United States v. Green, 293 F.3d 886, 895 (5th Cir. 2002). We therefore review the record only to determine whether it "is devoid of evidence pointing to guilt, or . . . [whether] the evidence on a key element of the offense was so tenuous that a conviction would be shocking." United States v. Pierre, 958 F.2d 1304, 1310 (5th Cir. 1992) (en banc) (internal quotations and citations omitted).

To establish the offense of hostage taking under the HTA, the Government must establish that the defendant (1) seized or detained another person, and (2) threatened to kill, injure, or continue to detain that person, (3) with the explicit purpose of compelling a third person or entity to act in some way as an 'explicit or implicit condition for the release of the person detained.'" United States v. Ibarra-Zelaya, 465 F.3d 596, 602 (5th Cir. 2006) (citation omitted); see 18 U.S.C. § 1203(a). Spezzia solely contests whether the evidence was sufficient

to establish the first element of the offense – i.e., whether Miguel actually was seized or detained.

This court has held that "a hostage is 'seized' or 'detained' within the meaning of the [HTA] when [he] is held or confined against [his] will for an appreciable period of time." United States v. Carrion-Caliz, 944 F.2d 220, 225 (5th Cir. 1991). To seize or detain a hostage, the hostage taker need not use, or even threaten to use, physical force or violence; non-physical restraint (e.g., fear or deception) can be sufficient to restrain a person against his will. Id. (citing United States v. Wesson, 779 F.2d 1443 (9th Cir. 1986)). Moreover, the HTA "does not require that the seizure or detention of the hostage be against the hostage's will from its inception"; while the initial acquiescence of the victim may be relevant to determining whether he was ever held against his will, it is not dispositive of the question, and it does not preclude a conviction under the HTA. Id. at 226.

Spezzia has not shown that the record is devoid of evidence that he detained Miguel, and thus has not shown that the jury's verdict was a manifest miscarriage of justice. See Pierre, 958 F.2d at 1310. Although Spezzia suggests that Miguel consented to be smuggled into the United States in exchange for a fee, such a contract was void ab initio and conferred no right on Spezzia to engage in conduct that would otherwise violate the HTA. See Carrion-Caliz, 944 F.2d at 226. The evidence at trial demonstrated that after he surreptitiously crossed into this country, Miguel was held in a hotel room under the constant supervision of the smugglers, and was incapacitated by the same disabilities that we previously have held to be indicative of detention: Miguel had not previously been to the United States and was unfamiliar with the country, he possessed no functional English language skills, and he lacked the resources or abilities that might enable him to leave. See id. The evidence further established that Miguel was instructed by the smugglers that if he was unable to secure the agreed-upon smuggling fee, he likely would be killed; such threats

convinced Miguel that he could not leave the hotel room voluntarily and that he was entirely under the smugglers' control until the smuggling fee had been paid.

In light of the foregoing, the jury could have reasonably concluded that Miguel was sufficiently frightened that he remained in the presence of the smugglers against his will; it is enough that the smugglers' threats intimidated Miguel and caused him to stay with them when he would have preferred to be elsewhere. See id. at 226-27. Accordingly, the conviction is AFFIRMED.