# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00596-CR

**Erica Marie Moreno, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
### NO. C-1-CR-12-219042, HONORABLE ELISABETH ASHLEA EARLE, JUDGE PRESIDING

## MEMORANDUM OPINION

Appellant Erica Marie Moreno appeals her conviction for the class A misdemeanor offense of driving while intoxicated. *See* Tex. Penal Code § 49.04 (defining DWI offense). After the trial court denied her pretrial motion to suppress evidence, appellant entered a plea of no contest. The trial court thereafter entered a judgment of conviction and granted appellant the right to appeal. On appeal, appellant challenges the denial of her motion to suppress evidence. Because we conclude that the trial court did not err when it denied appellant's motion to suppress evidence, we affirm.

## BACKGROUND

On November 15, 2012, at around 2:55 a.m., a police officer initiated a traffic stop after observing the vehicle that appellant was driving speeding. The traffic stop occurred on the shoulder of an interstate highway adjacent to an exit ramp. The officer approached the vehicle from the passenger side holding a flashlight and knocked on the passenger window, motioning for

appellant to roll the window down. After appellant rolled the window down, the officer smelled the odor of alcohol. He bent down and leaned forward, inserting his head, upper torso, arms, and the flashlight into the open passenger window while speaking with appellant. He questioned appellant, including how much she had to drink, and then asked her to step out of the vehicle. After appellant stepped out of the vehicle, the officer smelled the odor of alcohol on her breath and observed indications that she was intoxicated, including that her eyes were bloodshot, she was slurring her words, and she was swaying. The officer then transported appellant in his patrol car to a nearby gas station to administer field sobriety tests. After conducting the tests, the officer arrested appellant for driving while intoxicated and obtained a warrant to collect a blood specimen from her.

Prior to trial, appellant moved to suppress the evidence from the traffic stop, including the in-car video recording of the traffic stop, the testimony of the arresting officer, and the results of the field sobriety and blood testing. At the hearing on her motion, the arresting officer and appellant testified, and the in-car video recording of the traffic stop was admitted as an exhibit. After the trial court denied appellant's motion to suppress evidence, appellant entered a plea of no contest, and the trial court entered a judgment of conviction and assessed punishment at 30 days of confinement. This appeal followed.

**STANDARD OF REVIEW**

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Under that standard, we defer to the trial court's determination of historical facts "if supported by the record," *Wade v. State*, 422 S.W.3d 661,

666 (Tex. Crim. App. 2013), but we review de novo the trial court's application of the law to those facts, *Wilson*, 311 S.W.3d at 458. Similarly, we "afford almost total deference" to rulings on mixed questions of law and fact when the resolution of those questions depends on the evaluation of credibility and demeanor but review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). We also review de novo purely legal questions. *Id.*

Here, the trial court did not enter findings of fact. Thus, we must "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (citing *Carmouche*, 10 S.W.3d at 328)). In a suppression hearing, the trial court is "the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

## DISCUSSION

In two issues, appellant contends that the trial court erred when it denied her motion to suppress evidence. Appellant does not challenge the initial traffic stop. Her complaints concern the officer's insertion of his upper body and flashlight into the interior space of appellant's vehicle during his initial contact with appellant and the officer's subsequent transportation of appellant to the gas station in order to administer field sobriety tests.

**Officer's Initial Contact with Appellant**

In her first issue, appellant contends that the officer's insertion of parts of his upper body and his flashlight into the interior space of appellant's vehicle through the passenger-side window "immediately" "without a warrant, probable cause, or reasonable suspicion" and without appellant's consent or permission violated her reasonable expectation of privacy and was an illegal search in violation of her Texas and United States Constitutional rights, *see* U.S. Const. amend. IV; Tex. Const. art. I, § 9 (addressing searches and seizures), and, therefore, all evidence obtained by the officer after this illegal search should have been suppressed, *see Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963) (explaining "fruit of the poisonous tree" doctrine); *see also* Tex. Code Crim. Proc. art. 38.23 (prohibiting evidence obtained in violation of Constitution from being admitted in evidence against accused in trial of criminal case).

"The Fourth Amendment protects against unreasonable searches and seizures." *Walter v. State*, 28 S.W.3d 538, 540–41 (Tex. Crim. App. 2000); *see* U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 19–21 (1968) (describing Fourth Amendment analysis in context of investigatory stop). To claim the protection of the Fourth Amendment, a person must have "'a legitimate expectation of privacy in the invaded place.'" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)); *Walter*, 28 S.W.3d at 541; *see also State v. Dobbs*, 323 S.W.3d 184, 188 n.11 (Tex. Crim. App. 2010) ("An investigation that does not impinge upon a defendant's legitimate privacy or possessory interest does not implicate Fourth Amendment protections."); *see New York v. Class*, 475 U.S. 106, 112–13 (1986) (observing that

4

court "has recognized that the physical characteristics of an automobile and its use result in a lessened expectation of privacy" under Fourth Amendment).

Viewing the evidence in the light most favorable to the trial court's ruling, the trial court could have found that it was reasonable for the officer as part of his investigatory method, including to ensure the officer's safety, to approach the vehicle on the passenger side and bend down and insert parts of his upper body and his flashlight through the open passenger-side window to make contact and communicate with appellant. *See Wiede*, 214 S.W.3d at 25 (noting that appellate court must view evidence in light most favorable to trial court's ruling and assume that trial court made implicit findings of fact that support its ruling as long as findings are supported by record); *see also Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (describing when officer may conduct "protective searches" of passenger compartment of automobile and noting that "roadside encounters between police and suspects are especially hazardous"); *Goudeau v. State*, 209 S.W.3d 713, 719–20 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (describing appropriate "investigative methods" in context of traffic stop investigation that expanded in scope to include driving while intoxicated based on officer's observations of appellant).

As previously stated, appellant does not challenge the initial traffic stop, and the stop occurred in the early morning hours on the shoulder of an interstate highway adjacent to an exit ramp. The officer testified that he initiated the traffic stop after he "checked [appellant's] speed at 84 miles an hour in a posted 70-mile-an-hour zone." The officer testified that he approached on the passenger's side and did not attempt to approach on the driver's side because "[i]n that particular spot, it would be foolish to be that close to traffic." He also explained that appellant "was driving

5

a rather low car" and that, to "communicate effectively" and to make "contact with a person that was speeding," he bent down, illuminated the inside of the vehicle with his flashlight, and spoke "loudly because we were on the side of the interstate." He also retrieved appellant's license during this initial contact through the window. As shown by the video and testified to by appellant, the vehicle was a two-door Nissan Altima Coupe.

When asked about his first observations of appellant, the officer testified that, "[a]s she rolled down the passenger's side window, [he] could smell a strong odor of an alcoholic beverage emitting from the vehicle" and that she handed him her driver's license but that she was unable to locate her proof of insurance, "tossing" and "thumbing through some papers." He also testified that, "[o]nce [he] smelled the odor of alcoholic beverage coming from the interior of the car, [he] shifted [his] focus to a DWI investigation." He disagreed that he smelled the odor of alcohol by leaning into the car, testifying that he smelled the odor "before I leaned in the car" and that he "could smell the alcohol coming out from the vehicle." After the officer asked and appellant exited the vehicle, he also testified that he "could smell a strong odor [of alcohol] coming from her breath," that she had bloodshot eyes, and that she was swaying and slurring her words.

Crediting the officer's testimony, the trial court could have found that the officer's actions through the passenger-side window were reasonable, including to ensure the officer's safety, and, therefore, that there was no invasion of a legitimate expectation of privacy or an illegal search within the meaning of the Fourth Amendment. *See Walter*, 28 S.W.3d at 541–42; *see also Class*, 475 U.S. at 118 (concluding that limited search inside vehicle's interior was permissible because it was "focused in its objective and no more intrusive than necessary to fulfill that objective");

6

*St. George*, 237 S.W.3d at 725 (noting that trial court is "the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony"). We overrule appellant's first issue.[1]

**Transportation to Perform Field Sobriety Tests**

In her second issue, appellant challenges the officer's transportation of appellant to the nearby gas station to administer the field sobriety tests. She urges that the trial court erred in denying her motion to suppress the evidence obtained after she was transported to the gas station because, at that point, she was under arrest but not properly Mirandized. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (holding that accused must be informed when taken into custody and prior to questioning, that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him"). Appellant urges that, because this evidence was illegally obtained, it should have been suppressed pursuant to article 38.23 of the Texas Code of Criminal

---

[1] Appellant cites federal cases and cases from other states that discuss, based on their particular facts, whether an officer's intentional intrusion into the interior space of cars constituted illegal searches. We do not find any of these cases supportive of appellant's position that the officer here conducted an illegal search by his initial contact with appellant through the passenger-side window. For example, appellant cites *United States v. Pierre*, 932 F.2d 377 (5th Cir. 1991), but that case was reheard en banc by the Fifth Circuit. *See United States v. Pierre*, 958 F.2d 1304 (5th Cir. 1992). The en banc court concluded that, even if the border patrol agent conducted a search when he put his head into the interior space of a vehicle, he acted reasonably based on the physical features of the vehicle and the officer's right to have eye contact during his exchange with one of the passengers. *See id.* at 1309–10. Because the court concluded that the agent "was lawfully within the car when he smelled the burned marijuana," the court concluded that the evidence at issue fell within the "plain view (or plain smell) exception to the warrant or probable cause requirement." *Id.* at 1310.

Procedure. *See* Tex. Code Crim. Proc. art. 38.23 (prohibiting evidence obtained in violation of Constitution from being admitted in evidence against accused in trial of criminal case).

Appellant focuses on the testimony that appellant told the officer that she did not want to go to the gas station but that the officer told her that she did not have a choice, the officer's admission that he did not inform appellant of her *Miranda* rights, and his "commanding" tone of voice. Appellant also cites authority distinguishing between seizures and consensual encounters. *See, e.g.*, *United States v. Mendenhall*, 446 U.S. 544, 553 (1980) (observing that not all contact between police officers and citizens "involves 'seizures' of persons" and discussing when encounter becomes seizure (quoting *Terry*, 392 U.S. at 19 n.16)). But a police officer may detain a person for investigatory purposes without placing the person under arrest. *See Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010) (distinguishing between categories of interactions between police officers and citizens, explaining that "encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers," and noting that "investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave"); *State v. Sheppard*, 271 S.W.3d 281, 290–91 (Tex. Crim. App. 2008) (listing factors to consider to distinguish between investigatory detention and arrest).

"There are three distinct categories of interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests." *Crain*, 315 S.W.3d at 49 (citing *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002)). "In determining which category an interaction falls into, courts look at the totality of the circumstances." *Id.* "Generally, a

8

routine traffic stop does not place a person in custody for *Miranda* purposes." *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). "But a traffic stop may escalate from a non-custodial detention into a custodial detention when formal arrest ensues or a detainee's freedom of movement is restrained 'to the degree associated with a formal arrest.'" *Id.* (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). "We evaluate whether a person has been detained to the degree associated with arrest on an *ad hoc*, or case-by-case, basis." *Id.* (citing *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996)). "In making the custody determination, the primary question is whether a reasonable person would perceive the detention to be a restraint on his movement 'comparable to . . . formal arrest,' given all the objective circumstances." *Id.* (citing *Berkemer*, 468 U.S. at 441).

Here, the officer testified that he smelled the odor of alcohol coming from the vehicle and appellant's breath after she exited the vehicle and observed other indications that appellant was intoxicated, including slurred speech, bloodshot eyes, and swaying. Viewing this evidence in the light most favorable to the trial court's ruling, the trial court could have concluded that the officer was conducting a lawful temporary investigatory detention. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (explaining that officer conducts lawful temporary detention when he has reasonable suspicion to believe that individual is violating the law and that "[r]easonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity" (citing *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002), and *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001))); *Shakespeare*

9

*v. State*, No. 03-00-00707-CR, 2001 Tex. App. LEXIS 2727, at *5–8 (Tex. App.—Austin Apr. 26, 2001, no pet.) (not designated for publication) (noting courts' holdings that "an odor of alcohol on a motorist's breath in conjunction with another violation constitutes reasonable suspicion for an investigation of intoxication" and concluding that "traffic violation, the time of night, and the odor of alcohol on appellant's breath combined to give the officer reasonable suspicion to detain appellant to investigate his possible intoxication").

The trial court also could have credited the officer's testimony about the relocation to the nearby gas station to conclude that the officer's investigatory detention was ongoing at that point and that appellant was not being restrained "to the degree associated with a formal arrest." *See Ortiz*, 382 S.W.3d at 372. Although appellant told the officer that she did not want to go to the gas station, she sat down in the backseat of the patrol car without handcuffs and on her own volition albeit reluctantly and was then transported to the gas station where the officer administered the field sobriety tests. *See Crain*, 315 S.W.3d at 49 ("[A]n investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave."). The officer testified that he told appellant that she was not under arrest prior to transporting her to the gas station and that he moved her to the gas station for safety reasons because appellant pulled over in a "really bad spot" adjacent to an exit ramp on the interstate highway and that it was not safe to perform field sobriety tests in that location.[2] *See Castro v. State*, 373 S.W.3d 159, 166 (Tex. App.—San Antonio 2012, no pet.) ("Moving a suspect a short distance to further an investigation

---

[2] On the video recording, the officer tells appellant that "We're going to continue the investigation somewhere else where we're not going to get hit by a car," that she was not under arrest, and that she would be returned to her vehicle if everything "was fine."

10

is consistent with an investigatory detention's purpose."). The video recording also shows the locations of the traffic stop and the lapse of approximately 25 minutes from the officer's initial contact with appellant to the completion of the field sobriety tests and her arrest. *See Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014) (observing that "temporary detention may continue for a reasonable period of time until the officers have confirmed or dispelled their original suspicion of criminal activity"). Given these objective circumstances, the trial court could have concluded that appellant was not being detained to a degree associated with an arrest when she was transported to the gas station. *See Ortiz*, 382 S.W.3d at 372.

Appellant cites this Court's opinion in *Tapper v. State*, No. 03-06-00248-CR, 2007 WL 2403263 (Tex. App.—Austin Aug. 23, 2007, no pet.) (mem. op., not designated for publication), as support for her position that she was under arrest when she was taken to the gas station and, thus, that all statements by her and the officer, the video recording, and the results of the field sobriety tests and blood draw "should be suppressed as fruits of the poisonous tree." We find the facts in that case distinguishable. In *Tapper*, the defendant was involved in an one-car accident, and the investigating officers informed the defendant of his *Miranda* rights and questioned him prior to handcuffing and then transporting him to jail to perform sobriety field tests. *Id.* at *1–2. Based on those facts, we concluded that the defendant was arrested when he was handcuffed and placed in the patrol car to be transported to jail. *Id*. at *4.

Although one of the officers, similar to the officer here, cited safety reasons for moving the defendant to the jail in *Tapper*, testifying that "he wanted to have the appellant perform the tests at the jail because he was concerned that performing the tests at the scene would have been

11

unsafe due to heavy traffic in the area and the fact that the road was very narrow and had no shoulder," we observed that the in-car video recording showed that the officer informed the defendant that the reason that he was being transported to the jail was because the intoxilyzer was located there. *Id*. at \*2, \*6 n.2. The defendant in *Tapper* also was informed of his *Miranda* rights and handcuffed before being placed in the patrol car to be transported to the jail. *Id*. at \*1–2. In contrast, the officer here advised appellant that she was being transported to a nearby location for safety reasons and that she was not under arrest, and she was not handcuffed before being transported to the gas station. *Compare id.* at \*4 (concluding that "reasonable person under the circumstances would have believed that his freedom of movement was being restricted at the same level associated with a formal arrest at the time that the appellant was handcuffed and placed in [patrol] car"); *see also Ortiz*, 382 S.W.3d at 372 (evaluating "whether a person has been detained to the degree associated with arrest on an *ad hoc*, or case-by-case, basis").

Further, a police officer is not required to inform a person who is being investigated for driving while intoxicated of her *Miranda* rights before administering field sobriety tests. *See Arthur v. State*, 216 S.W.3d 50, 54 (Tex. App.—Fort Worth 2007, no pet.) (explaining that field sobriety tests are not testimonial "because their results do not create 'an express or implied assertion of fact or belief'" and observing that "Fifth Amendment applies only to incriminating evidence that is testimonial in nature" (quoting *Gassaway v. State*, 957 S.W.2d 48, 50 (Tex. Crim. App. 1997) and citing *Williams v. State*, 116 S.W.3d 788, 791 (Tex. Crim. App. 2003)); *see also Berkemer*, 468 U.S. at 429 (stating "central principle" established by *Miranda*, that "if the police take a suspect into

12

custody and then ask him questions without informing him of [his *Miranda* rights], his responses cannot be introduced into evidence to establish his guilt").

Because we conclude that the trial court could have found that appellant was not arrested and was being detained for investigatory purposes when she was transported to the gas station, we overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the judgment of conviction.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed:   June 30, 2016

Do Not Publish