Argued and submitted February 10, reversed and remanded November 19, 1997

# STATE OF OREGON,
*Respondent,*

*v.*

# BRIAN FRANKLIN HENDRICKS,
*Appellant.*

(TC95-14125; CA A92896)

948 P2d 740

Raymond S. Tindell argued the cause and filed the brief for appellant.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

Leeson, J., dissenting.

## LANDAU, J.

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII). ORS 813.010. He assigns error to the trial court's denial of his motion to suppress. We review for errors of law, ORS 138.220, and reverse.

State Trooper Allori stopped defendant for a lane violation. He ran a record check on defendant and discovered that defendant had a number of prior DUII violations. He wrote out the citation for the lane violation and then leaned into the open driver-side window of defendant's truck to deliver the citation to defendant. When he inserted his head into the truck, Allori smelled a strong odor of alcohol on defendant's breath. He then looked at defendant more carefully and observed that defendant's eyes were bloodshot and watery. Allori asked defendant how much he had to drink that day, and defendant responded that he had four beers. Allori then asked defendant if he could look into defendant's eyes. Defendant agreed, and Allori conducted a Horizontal Gaze Nystagmus test. Allori requested that defendant step out of the truck to perform other field sobriety tests, and defendant agreed. At the conclusion of the tests, Allori arrested defendant for DUII.

Before trial, defendant moved to suppress the results of the field sobriety tests on the ground that they were the fruits of an illegal search that took place when Allori inserted his head into the truck. The trial court denied the motion, explaining:

> "The most interesting argument * * * is the position that [Allori] leaning his head into the car to explain the ticket rises to the level of a search. Others may go the other way, but I'm not persuaded by that, given the totality of the circumstances. The testimony I find persuasive is that the officer was handing [defendant] a ticket, leaned in to give it to him, and explain. And while there, just stumbled upon these other things."

On appeal, defendant argues that the trial court erred in denying the motion to suppress. According to defendant, when Allori stuck his head into the truck, that constituted a

search. Therefore, because Allori at that point lacked reasonable suspicion to investigate anything other than the lane violation for which defendant was stopped, the search constituted an unlawful expansion of a traffic stop in violation of ORS 810.410.[1]

■     Under ORS 810.410, a police officer has limited authority to detain and investigate during a traffic stop. The officer must have reasonable suspicion that a defendant has engaged in illegal activity other than the traffic infraction in order to expand the investigation beyond the traffic infraction itself. *State v. Aguilar*, 139 Or App 175, 181, 912 P2d 379, *rev den* 323 Or 265 (1996). Thus, for example, an officer cannot conduct a search or even ask for permission to search for evidence of a crime in the absence of reasonable suspicion that a defendant has engaged in criminal activity. If, in contrast, the officer develops reasonable suspicion that a defendant has engaged in criminal activity based on what he or she lawfully observes during the course of the traffic stop, then the officer may inquire further. Thus, for example, an officer who observes from a lawful vantage point evidence that a defendant is intoxicated may seek permission to conduct field sobriety tests. *State v. Berg*, 140 Or App 388, 391, 914 P2d 1110 (1996).

In this case, the question is whether Allori developed reasonable suspicion that defendant was intoxicated on the basis of information obtained from a lawful vantage point. There is no debate that Allori developed his suspicion *after* inserting his head into the driver-side window of defendant's truck and smelling alcohol and that, before that act, he did not suspect that defendant had been engaged in criminal activity. Defendant argues that Allori had no right to insert his head into the truck and that Allori's conduct amounted to a search, which, under ORS 810.410, Allori could not perform without reasonable suspicion *before* he inserted his head into the truck. The state argues that, when Allori inserted his head into the truck, he did not conduct a search within the

---

[1] ORS 810.410(3)(b) provides that a police officer:

"May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infration, identification and issuance of citation."

meaning of Article I, section 9, of the Oregon Constitution, and, as a result, he developed his suspicion of defendant's intoxication from a lawful vantage point and within the scope of an investigation permitted under ORS 810.410. The question, then, is whether Allori conducted a search when he stuck his head into the window of defendant's truck. If it was a search, then—even if it otherwise was a reasonable search—Allori exceeded the scope of the traffic stop. *Aguilar*, 139 Or App at 181-82.

■ Under Article I, section 9, a "search" occurs "when a person's privacy interests are invaded." *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). The reasonableness of a given act, under the circumstances, does not determine whether the act is a search. *State v. Wacker*, 317 Or 419, 426, 856 P2d 1029 (1993).[2] If defendant has a protected privacy interest and that interest has been invaded, there has been a search. *Id.*

Illustrating the application of the rule is the Supreme Court's decision in *State v. Rhodes*, 315 Or 191, 843 P2d 927 (1992). In that case, Officer Hughes saw a pickup truck parked on a public street with its dome lights on and the engine running. Hughes drove to a point beside the truck and saw the defendant slumped over to the passenger's side and the driver-side door opened slightly. Hughes got out of his car, opened the door of the truck, smelled the odor of alcohol and noticed a can of beer on the floor next to the defendant's foot. Hughes awakened the defendant and ultimately arrested him for driving under the influence. The trial court granted the defendant's motion to suppress evidence obtained after Hughes opened the door of the truck on the ground that the evidence had been obtained from an unlawful search.

The Supreme Court began its review of the case with a determination of whether, in opening the door of the truck,

---

[2] The reasonableness of the officer's conduct goes to whether the search was *constitutional*, not to whether it was a search. *Wacker*, 317 Or at 426 ("If the police conduct is not a search within the meaning of Article I, section 9, this court will not reach the issue of whether the conduct was unreasonable."). *See also State v. Ainsworth*, 310 Or 613, 616, 801 P2d 749 (1990).

Hughes "searched" the truck. The court concluded that he did and explained its reasoning as follows:

"Under Article I, section 9, a 'search' is an intrusion by a governmental officer, agent, or employee into the protected privacy interest of an individual. Hughes' act of opening the door of defendant's pickup from three or four inches (at which point the inside of the vehicle could not be seen or smelled) to completely open, thus exposing the contents of the inside of the vehicle, and looking inside was a 'search' under Article I, section 9: (1) It is clear that defendant had a protected privacy interest in his vehicle. (2) Hughes' actions constituted an 'intrusion.' Hughes physically grasped the vehicle's door and moved it, exposing the inside of the passenger compartment to a visual inspection of a scope and intensity that, so far as this record shows, could not have been made without opening the door. In other words, Hughes' action permitted him to observe or smell what he otherwise could not have seen or smelled from a lawful vantage point. That was a search."

*Id.* at 196-97 (citations omitted).

Even more to the point is our decision in *State v. Hicks*, 89 Or App 540, 749 P2d 1221 (1988). In that case, the police officer signaled the defendant to stop for a lane change violation. The officer asked the defendant for identification, but the defendant said that he had left it at home. The officer then asked the defendant to check the vehicle glove compartment for the vehicle registration. As the defendant did so, the officer inserted his head into the driver-side window of the vehicle as a safety precaution. As the officer did so, he smelled the odor of marijuana and saw an athletic bag behind the passenger seat. He ordered the defendant out of the car, searched the bag and found evidence of drugs. The defendant was arrested for, among other things, possession of a controlled substance. The defendant moved to suppress the evidence that the officer obtained after smelling the presence of marijuana, but the trial court denied the motion. We reversed, holding that, under the circumstances, it was not reasonably necessary for the safety of the officer to insert his head into the vehicle. *Id.* at 544-45. Accordingly, we concluded that the "intrusion into defendant's car violated defendant's protected interests under Article I, section 9." *Id.* at

545. In other words, when the officer inserted his head into the window of the vehicle, he conducted a search.

■ Applying the analysis of *Rhodes* and *Hicks* to the facts of this case leads to the same conclusion. As in both cases, (1) it is clear that defendant had a protected privacy interest in his truck, and (2) Allori's actions constituted an intrusion. By inserting his head into the interior of the truck, Allori was allowed to observe and smell what he otherwise would not have been able to observe or smell from a lawful vantage point. That was a search.

■ The state insists that, even if *Rhodes* and *Hicks* otherwise might suggest that an officer inserting his head into a vehicle is a search, suppression should not be required, because, under ORS 153.535(1)(a), he was obligated to deliver the citation to defendant. According to the state: "Any intrusion that might be considered a search was not an unreasonable search and does not call for suppression." That argument is unavailing for two reasons. First, ORS 153.535(1)(a) provides only that a traffic summons "be delivered to the person cited." The statutory obligation to hand a traffic citation to defendant does not explain why it was necessary for Allori to stick his head into defendant's truck. Second, even if the state were correct that the search in this case was reasonable, it still does not follow that suppression is not required. As *Aguilar* makes clear, whether reasonable or not, a search cannot be conducted during a traffic stop without *prior* reasonable suspicion. *Aguilar*, 139 Or App at 181.

■ Because Allori's conduct of inserting his head into defendant's truck constituted a search, and because it is undisputed that Allori did not suspect defendant of engaging in criminal conduct before that, it necessarily follows that Allori exceeded the scope of the traffic stop. The trial court therefore erred in denying defendant's motion to suppress.

Reversed and remanded.

**LEESON, J.,** dissenting.

The majority concludes that State Trooper Allori conducted a search without probable cause when he delivered a citation for a lane violation to defendant. According to the majority, Allori "inserted his head" into defendant's

truck, 151 Or App at 273, 274, or "stuck his head into the truck," *id.* at 273, in violation of Article I, section 9, of the Oregon Constitution. Further, the majority contends, this case is analogous to *State v. Rhodes,* 315 Or 191, 843 P2d 927 (1992), and very similar to *State v. Hicks,* 89 Or App 540, 749 P2d 1221 (1988). Consequently, it concludes, the results of the field sobriety tests that Allori conducted after smelling a strong odor of alcohol on defendant's breath must be suppressed. I disagree with the majority's characterization of the facts and its reliance on *Rhodes* and *Hicks,* and I respectfully dissent.

Allori stopped defendant for a lane violation after defendant's 1986 Chevrolet truck passed Allori while driving at a high rate of speed. Allori decided to issue defendant a citation. ORS 811.420(1). Allori testified that when he delivered the citation to defendant, he "leaned into" the open driver-side window of defendant's truck because the wind was blowing, and he did not want the papers to blow away. While Allori was explaining the citation to defendant, he smelled a strong odor of alcohol on defendant's breath and, after investigating his suspicions, Allori arrested defendant for driving under the influence of intoxicants.

The trial court denied defendant's motion to suppress. It found "persuasive" Allori's testimony that he leaned into the open driver-side window of defendant's truck to hand defendant the citation for a lane violation and to explain the citation to him. The issue is whether Allori's actions constituted a "governmental intrusion into a person's protected privacy interest," *State v. Nagle,* 320 Or 24, 29, 880 P2d 451 (1994), or whether instead his detection of the strong odor of alcohol on defendant's breath was an unaided observation from a lawful vantage point. *State v. Ainsworth,* 310 Or 613, 622, 801 P2d 749 (1990). The test to determine whether Allori violated defendant's privacy is "whether the practice, if engaged in wholly at the discretion of the government, will significantly impair 'the people's' freedom from scrutiny." *State v. Campbell,* 306 Or 157, 171, 759 P2d 1040 (1988); *see also Nagle,* 320 Or at 29.

I first disagree with the majority's assertion that Allori "inserted his head" into defendant's truck or that he

"stuck his head into the truck." The evidence in the record is that Allori leaned into the driver-side window to explain to defendant the citation for the traffic infraction. In my view, Allori did not exceed the bounds of ordinary social intercourse or concepts of privacy.

I also disagree with the majority's contention that the facts of this case are like those in *Rhodes*. In that case, Officer Hughes suspected that the driver might be under the influence of intoxicants when he saw the defendant slumped over in the seat of his pickup truck, which was parked on a city street with its engine running. He went up to the truck and opened further the driver-side door that already was slightly ajar. The Supreme Court held that when Hughes physically grasped the door of the truck and moved it, exposing the passenger compartment to a visual inspection that could not have been made without opening the door, his actions were an "intrusion." It held that "Hughes' action in fully opening the vehicle's door was a 'search' under Article I, section 9." *Rhodes*, 315 Or at 197.

Hughes' actions in *Rhodes* were intrusive in a way that Allori's actions in this case were not. Hughes opened a car door and looked inside. Allori, by contrast, inclined his head through the plane of the driver-side window to block a stiff wind and to deliver and explain the citation to defendant. Allori's actions did not significantly impair defendant's freedom from scrutiny. "Breaking the plane" of a vehicle's window to deliver and explain a traffic citation is not an intrusion into a person's protected privacy interest.

The majority believes that the facts in *Hicks* are "[e]ven more to the point." 151 Or App at 276. I disagree. In that case, Officer Galick stopped the defendant for two traffic infractions. The defendant did not have identification or car registration. Galick told the defendant to look in the glove compartment for the vehicle registration. As the defendant leaned across the front seat to do so, Galick testified that he "bent down" and "duck[ed] down" until "[he] was definitely in the car." In fact, Galick's head was far enough inside the car to see an athletic bag amid crumpled newspapers on the floor of the *back seat* compartment. We rejected Galick's claim that he was entitled to insert his head into the defendant's car

because a glove box "is a good place to have a weapon" and he was concerned for his safety. *Hicks*, 89 Or App at 544. We held that, lacking a valid officer safety rationale, Galick's intrusion violated the defendant's interests protected by Article I, section 9. *Id.* at 544-45.

The evidence in this case is that Allori leaned into the window to deliver a traffic citation to defendant and explain it to him. As I understand the majority, Allori "erred" by inclining his head in a way that allowed him to explain the citation to defendant. In my view, Allori did not exceed the bounds of ordinary social intercourse or concepts of privacy when he did so. He was at a lawful vantage point when he smelled the strong odor of alcohol on defendant's breath.

I respectfully dissent.