*Terrance Jamal Grant v. State of Maryland*, No. 65, September Term, 2015.  Opinion by Hotten, J.

**CRIMINAL JUSTICE — FOURTH AMENDMENT — SEARCH AND SEIZURE —TRAFFIC STOPS — AMBIGUOUS EVIDENCE —** Court of Appeals held that the circuit court erred in denying Petitioner's motion to suppress, where the evidence regarding whether an officer detected the odor of marijuana before or after he inserted his head into the passenger window of Petitioner's vehicle during a traffic stop could not be determined, and therefore, did not establish that the officer's warrantless search was lawful.  The Court of Appeals further held that the Court of Special Appeals, in applying a supplemental rule of interpretation to resolve an alleged ambiguity, thereby drawing inferences in favor of the State, did not apply the appropriate standard of review to the circuit court's judgment because the inference made was inconsistent with the evidence of record.

Circuit Court for Frederick County
Case No. 10-K-13-053987
Argued: March 4, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 65

September Term, 2015

_____

TERRANCE JAMAL GRANT

v.

STATE OF MARYLAND

_____

Barbera, C.J.
*Battaglia,
Greene,
Adkins,
McDonald,
Watts,
Hotten,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: July 12, 2016

*Battaglia, J., now retired, participated in the
hearing and conference of this case while an
active member of this Court; after being recalled
pursuant to the MD. Constitution, Article IV,
Section 3A, she also participated in the decision
and adoption of this opinion.

In this case, we granted certiorari to consider whether the Circuit Court for Frederick County erred in denying Petitioner, Terrance Jamal Grant's motion to suppress, where it was "not clear" whether the officer detected the odor of marijuana before or after inserting his head into the passenger side window of the vehicle. We also consider whether, in affirming the judgment of the circuit court, the Court of Special Appeals applied the appropriate standard of review to the circuit court's factual findings and legal conclusions. For the reasons that follow, we shall reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

At approximately 6:03 p.m. on May 23, 2013, Deputy First Class Chad Atkins ("Deputy Atkins") of the Frederick County Sheriff's Office, was patrolling Worthington Boulevard in an unmarked police vehicle when he observed a speeding vehicle being driven by Petitioner. As a result, Deputy Atkins, a certified radar and laser operator, activated his radar equipment and determined that the vehicle was traveling at a speed of 50 miles per hour in a 35 mile per hour zone. Deputy Atkins subsequently stopped Petitioner for the traffic violation.

Deputy Atkins approached the passenger side of Petitioner's vehicle, subsequent to Petitioner rolling down the window. Petitioner was the sole occupant. During the suppression hearing, Deputy Atkins testified that upon initial contact with Petitioner, he detected the odor of marijuana emanating from the vehicle. He further testified that he could not recall whether his head crossed the window's threshold while speaking with Petitioner. Deputy Atkins was familiar with the smell of marijuana, having received over one hundred hours of police training in controlled dangerous substances—including the

identification of marijuana—and completing approximately one hundred drug-related arrests. Deputy Atkins also testified that the weather was windy and the odor of marijuana "quickly dissipated." Approximately two to three minutes after Deputy Atkins initiated the stop, he returned to his vehicle and requested a nearby K-9 dog unit. Corporal Eyler[1] arrived approximately fifteen minutes later. Thereafter, Deputy Atkins returned to Petitioner's vehicle, and requested that he step out. While Deputy Atkins and Petitioner stood behind Petitioner's vehicle, Corporal Eyler began the K-9 dog scan.

While Corporal Eyler conducted the scan, Deputy Atkins informed Petitioner that he detected the odor of marijuana emanating from his vehicle. Petitioner admitted that there was pipe and a small amount of marijuana in the center console. Shortly thereafter, Corporal Eyler informed Deputy Atkins of a positive alert from Petitioner's vehicle. A search of the vehicle by Deputy Atkins revealed a film canister containing 1.6 grams of marijuana, as well as a smoking device containing burnt marijuana residue in the center console. Petitioner was placed under arrest and later released with a criminal citation. Petitioner subsequently moved to suppress the evidence seized from his vehicle, asserting that Deputy Atkins conducted an unconstitutional search when he inserted his head into the passenger window and detected the odor of marijuana.

### Suppression Hearing

Petitioner's suppression hearing was held before the circuit court on January 6, 2014. Deputy Atkins testified on behalf of the State regarding his initial contact with

---

[1] Corporal Eyler's full name was not reflected in the record.

Petitioner.  On cross-examination, defense counsel sought clarification regarding the moment Deputy Atkins detected the odor of marijuana.  The cross-examination proceeded, in relevant part, as follows:

> [DEFENSE COUNSEL]: So when you stopped him, you got out of your car, did you smell marijuana?
>
> [DEPUTY ATKINS]: Yes, on the initial contact.
>
> [DEFENSE COUNSEL]: I said when you got out of your car did you smell marijuana?
>
> [DEPUTY ATKINS]: You mean before I went up to his car?
>
> [DEFENSE COUNSEL]: Yeah.  Before, before you went up to his car did you smell marijuana?
>
> [DEPUTY ATKINS]: No.
>
> [DEFENSE COUNSEL]: Okay.  Did you perform a sniff of his car?
>
> [DEPUTY ATKINS]: Did, what do you mean by sniff?
>
> [DEFENSE COUNSEL]: Like a dog. I'm saying did you specifically examine his car for, for the smell of marijuana?
>
> [DEPUTY ATKINS]: You mean did I walk around the car and just sniff at, at his car?
>
> [DEFENSE COUNSEL]: I understand the answer may be no.
>
> [DEPUTY ATKINS]: No.
>
> [DEFENSE COUNSEL]: Okay.  Ah, so the point at which you, you allege you smelled marijuana was when you kind of leaned in to get his, get his license and registration?
>
> [DEPUTY ATKINS]: If you call it leaning, it's when he rolled down his window and I made con—when I was speaking with him.

- 3 -

[DEFENSE COUNSEL]: Okay. Do you recall how you, how you positioned yourself when you were speaking with him?

[DEPUTY ATKINS]: Like I, I, I don't know how to explain it 'cause I do it on every single stop that I have. I, you know, put my head, he, they have the, they roll the window down and I have my head by their window. And—

[DEFENSE COUNSEL]: Okay. Do you recall if your head entered the window or not?

[DEPUTY ATKINS]: I don't know if my head entered through the window [pane] or not. I wouldn't of, you know, it, I, I don't know. Honestly.

[DEFENSE COUNSEL]: Okay. You wouldn't be surprised to find out that it did.

[DEPUTY ATKINS]: If I had crossed where the window glass was? No—

[DEFENSE COUNSEL]: Where the, where the pane—

[DEPUTY ATKINS]: —because sometimes—

[DEFENSE COUNSEL]: —would have been—

[STATE'S ATTORNEY]: Objection, Your Honor.

THE COURT: Let, let him answer. One at a time. We have all morning to finish the (unclear—one word). Go ahead.

[DEFENSE COUNSEL]: Thank you.

[DEPUTY ATKINS]: No, I, the, wouldn't, I wouldn't be surprised.

\* \* \*

Following the parties' agreement regarding the admissibility and authenticity of the DVD traffic stop video, it was played in court. Although the point at which Deputy Atkins detected the odor of marijuana was not clear from the video, the court acknowledged that

Deputy Atkins' head appeared to cross the window pane into the interior of Petitioner's vehicle.

Defense counsel subsequently moved to suppress the 1.6 grams of marijuana contained in a film canister in the center console of Petitioner's vehicle, arguing that an illegal search occurred in violation of the Fourth Amendment when Deputy Atkins inserted his head into the passenger window. Defense counsel further argued that the prolonged detention while awaiting arrival of the K-9 unit also violated the Fourth Amendment. The State countered that the traffic stop escalated to a narcotics investigation the moment Deputy Atkins detected the odor of marijuana, providing, "at a minimum," reasonable articulable suspicion to justify Petitioner's detention.

After considering the evidence and arguments of counsel, the court rendered the following ruling:[2]

> As this was a warrantless search the burden of course is on the State to show that the stop was reasonable and justified under the [F]ourth [A]mendment because of course as a general rule the [F]ourth [A]mendment prohibits searches and seizures without a warrant except in a certain specific number of [ ] exceptions. . . .
>
> In this case the [c]ourt finds the following facts. On the date in question Deputy Atkins was on routine patrol in Frederick County, Maryland. While on routine patrol he observed a vehicle being driven by a person who we later discovered to be [Petitioner] that was, appeared to be, to him to be exceeding the posted speed. Deputy Atkins was going in the opposite direction on Worthington Boulevard in Urbana and he did a U-turn and pulled the vehicle over. He approached the vehicle on the passenger side of the vehicle. The window was rolled down. [Petitioner] was in the driver's side, he was the only person in the vehicle.

---

[2] The ruling also addressed several other evidentiary challenges and motions which are not relevant to the issue before this Court.

Deputy Atkins asked for his of course license and registration and during that process his, from the video his head appeared to have intruded somewhat into the window space, into the interior of [Petitioner's] car. The testimony of Deputy Atkins was that he didn't recall whether his head went in the vehicle or not. *It was very possible [Deputy Atkins'] head would have broken the [pane] and it was at some point, it was not clear whether it was when his head was inside or when the window was rolled down, he-smelled what he believed based on his training and experience smelled like marijuana.* But he also testified that it dissipated rather quickly.

Based on those factors what Deputy Atkins chose to do at that time was to not conclude that there was probable cause to conduct [ ] a search of [Petitioner's] vehicle. Although case law clearly indicates that the test, that the police officer's, trained police officer's smelling of an odor of marijuana can perform the basis of probable cause to do a warrantless search and of course one of the exceptions permitted in the [F]ourth [A]mendment is if the officer has probable cause to search or arrest for an offense committed in his presence, which of course probable cause of a strong odor of marijuana would be evidence, probable cause that [Petitioner] was in possession of marijuana.

But [Deputy Atkins] was not, it wasn't a strong odor so he was not convinced. But it did create an articulable suspicion which was reasonable under the circumstances to detain [Petitioner] for further investigation until a K-9 unit could arrive. That further detention was approximately 15 minutes. I think that was [Deputy Atkins'] testimony on the stand and in reviewing the time frames on the, um, on the video that was very close. I think the, actually got back to the car at like four minutes after the, the stop was initiated and I think the dog came at about, and started the search about 20 minutes after the stop.

So that was close. So the question is was that a sufficient basis, a sufficient articulable reason to detain [Petitioner] for that period of time and the [c]ourt does find that is a sufficient articulable justification for the further detention of [Petitioner]. This was not one of the cases where it was just because it was some other reason and that they were trying to justify the stop based on it took a long time to get the tickets written or the information back from the Motor Vehicle Administration. That was not the reason offered by the State. But it was because of the odor of marijuana that [Deputy Atkins] smelled.

And quite frankly the [c]ourt, ah, commends [Deputy Atkins] for not arresting [Petitioner], but to make sure that what he, that there was probable cause before he arrested [him]. Or eventually charged him. I believe the

- 6 -

testimony was he charged him on a, um, on a citation and, and never did officially put [Petitioner] into handcuffs. Which again, the [c]ourt finds based on all the circumstances is, was certainly appropriate under this circumstance. . . .

(emphasis added).

Following the denial of his suppression motion, Petitioner pled not guilty to an agreed statement of facts. The court found Petitioner guilty of possession of marijuana, and subsequently sentenced him to thirty days, all suspended, in addition to one year of probation, a $200 fine, and $145 in court costs. Petitioner noted a timely appeal to the Court of Special Appeals, which affirmed the judgment. *See Terrance Jamal Grant v. State of Maryland*, No. 2742 Sept. Term, 2013, 2015 WL 5822270 (Md. Ct. Spec. App. July 24, 2015).

## Court of Special Appeals' Ruling

On appeal, Petitioner averred that the court's indication that when Deputy Atkins detected the odor of marijuana was "not clear," reflected an unambiguous explicit factual finding. Therefore, the State failed to satisfy its "burden to justify the warrantless search and arrest[,]" and the circuit court erred in denying Petitioner's suppression motion. In contrast, the State argued that the court's statement was ambiguous and not an explicit finding, and therefore, based on the supplemental rules of appellate review, the court may resolve ambiguities and draw inferences from the evidence in favor of the prevailing party, here, the State.

The Court of Special Appeals adopted the State's argument, concluding that:

[T]he [circuit] court's statement reflected the ambiguous nature of the evidence. As we have previously explained, we resolve any ambiguity by

- 7 -

looking to the officer's testimony that he smelled the marijuana upon 'initial contact.' This can be interpreted to mean that Deputy Atkins detected the tell-tale odor of marijuana before he placed his head in the vehicle's window. If this was the case, and we must interpret the evidence in the light most favorable to the State, then there was no warrantless search of [Petitioner's] vehicle. Although there existed, at that moment, probable cause for Deputy Atkins to arrest [Petitioner] and search the vehicle he did not do so. Instead, he took the extra precaution of calling for a K-9 [dog unit] to respond to the scene to confirm his reasonable suspicion that criminal activity was afoot. Then he placed [Petitioner] [ ] under arrest and searched the vehicle. Under the totality of the circumstances, the stop and search were reasonable.

*Grant*, 2015 WL 5822270, at *7. We thereafter, granted certiorari.

## STANDARD OF REVIEW

The well-established standard of review for motions to suppress is as follows:

Our review of a circuit court's denial of a motion to suppress evidence under the Fourth Amendment, ordinarily, is limited to the information contained in the record of the suppression hearing and not the record of the trial. When there is a denial of a motion to suppress, we are further limited to considering facts in the light most favorable to the State as the prevailing party on the motion. Even so, we review legal questions *de novo*, and where, as here, a party has raised a constitutional challenge to a search or seizure, we must make an independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case. We will not disturb the [circuit] court's factual findings unless they are clearly erroneous.

*State v. Wallace*, 372 Md. 137, 144, 812 A.2d 291, 295 (2002) (internal citations and citation omitted).

## DISCUSSION

### I. The circuit court erred in denying Petitioner's suppression motion

The arguments advanced by the parties are similar to those raised before the Court of Special Appeals, *supra*, and ultimately require us to decide whether the State satisfied its burden of proving that Deputy Atkins conducted a lawful search. We hold that the

- 8 -

circuit court erred in denying Petitioner's suppression motion where the evidence was unclear regarding the timing of Deputy Atkins' detection of the odor of marijuana. In the absence of a finding that Deputy Atkins detected the odor of marijuana *before* he inserted his head into the passenger window, the State did not satisfy its burden regarding the lawfulness of the search. We explain.

### A. When Deputy Atkins detected the odor of marijuana was dispositive

Resolution of the suppression motion hinged upon a factual determination of when Deputy Atkins detected the odor of marijuana—before or after he inserted his head into the passenger window. This determination was critical to ascertaining whether an unlawful search occurred.

In addressing the constitutionality of Deputy Atkins' conduct, we first acknowledge that only the events occurring after the traffic stop are relevant to our Fourth Amendment analysis. Because Deputy Atkins had probable cause to stop and temporarily detain Petitioner's vehicle as a result of a speeding violation, the initial traffic stop was constitutional. *See Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772 (1996) (acknowledging that an officer may have probable cause to stop and temporarily detain a vehicle after a traffic violation); *Byndloss v. State*, 391 Md. 462, 480, 893 A.2d 1119, 1130 (2006) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

### i. The interior of Petitioner's vehicle was protected by the Fourth Amendment

The Fourth Amendment guarantees individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. This constitutional mandate is also applicable to the states, through the Fourteenth Amendment. *Corbin v. State*, 428 Md. 488, 499, 52 A.3d 946, 952 (2012); *see also* Maryland Declaration of Rights, Art. 26. "The capacity to invoke Fourth Amendment protection requires the individual to establish that he or she maintained 'a legitimate expectation of privacy' in the house, papers, or effects searched or seized." *Whiting v. State*, 389 Md. 334, 346, 885 A.2d 785, 792 (2005) (citing *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512 (1967) (citations omitted). An individual maintains a legitimate expectation of privacy by "demonstrat[ing] an actual (subjective) expectation of privacy in the item or place searched, [and by] prov[ing] that the expectation is one that society is prepared to recognize as reasonable." *Williamson v. State*, 413 Md. 521, 534, 993 A.2d 626, 634 (2010) (citing *Katz*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J. concurring)).

Accordingly, subject only to a few specifically established and well-delineated exceptions,[3] a warrantless search or seizure that infringes upon the protected interests of

---

[3] Notable exceptions to the warrant requirement include: 1) search incident to an arrest (*Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710 (2009)); 2) hot pursuit (*Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642 (1967)); 3) the plain view doctrine (*Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301 (1990)); 4) the *Carroll* doctrine (*Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280 (1925)); 5) stop and frisk (*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968)); 6) consent (*Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041 (1973)); and 7) exigent circumstances (*Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849 (2011)).

an individual is presumptively unreasonable. *Katz*, 389 U.S. at 356-57, 88 S.Ct. at 514-16; *Belote v. State*, 411 Md. 104, 112, 981 A.2d 1247, 1252 (2009). The government has the burden of overcoming that presumption. *Southern v. State*, 371 Md. 93, 105, 807 A.2d 13, 20 (2002).

Although not as substantial as the privacy interest that exists in one's home, Fourth Amendment protection extends to the interior of a vehicle. *See New York v. Class*, 475 U.S. 106, 108, 114-15, 106 S.Ct. 960, 966 (1986) ("While the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police."); *Arizona v. Gant*, 556 U.S. 332, 345, 129 S.Ct. 1710, 1720 (2009) (acknowledging that although the privacy interest in one's vehicle is less substantial than in one's home, the former interest is nevertheless important and deserving of constitutional protection.). *See, e.g.*, *United States v. Jones*, ___U.S. ___, ___, 132 S.Ct. 945, 952 (2012) (acknowledging "that an officer's momentary reaching into the interior of a vehicle did constitute a search.").

Courts generally hold that an officer's physical intrusion into the interior of a vehicle through an open window or door constitutes a search under the Fourth Amendment. *See United States v. Ryles*, 988 F.2d 13, 15 (5th Cir. 1993) (officer's action in inserting his head into the interior of a van through an open window constituted a Fourth Amendment search, albeit a reasonable one, due to a series of suspicious conduct by the defendant.); *accord, e.g., State v. Epperson*, 703 P.2d 761, 764, 768–69 (Kan. 1985); *Commonwealth v. Podgurski*, 436 N.E.2d 150, 152–53 (Mass. 1982), *cert. denied*, 459 U.S. 1222, 103 S.Ct.

1167 (1983); *People v. Aquino*, 500 N.Y.S.2d 677, 678–79 (N.Y. App. Div. 1st 1986); *State v. Hendricks*, 948 P.2d 740, 743 (Or. Ct. App.1997); *State v. Larson*, 946 P.2d 1212, 1213 (Wash. Ct. App. 1997).

Additionally, under the plain view doctrine,[4] an officer's detection of odors by virtue of a physical intrusion into a vehicle's interior, is also considered a "search." In WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT, § 2.5(c) (5th ed. 2015), Lafave opines:

> Sometimes the police detect the contents of a vehicle by the sense of smell. . . . . 'This olfactory impression . . . comes under the plain view doctrine which applies to all sensory impressions gained by an officer who is legally present in the position from which he gains them.' In *United States v. Martinez-Miramontes*, [494 F.2d 808 (9th Cir. 1974)], where a customs agent approached a parked car and, by sniffing around a crevice where the trunk closed, detected the odor of marijuana, the court concluded that this degree of scrutiny was not objectionable: 'We find no distinction of substance between leaning down and turning the head to look inside a motor vehicle to see articles which then come within the 'plain view' doctrine . . . and leaning down and sniffing to detect the odor of marijuana.' But if the officer leans into an open window to detect the odor, then there *has* been a search.

(internal footnotes omitted). *See also Cruz v. State*, 168 Md. App. 149, 167-68, 895 A.2d 1076, 1086-87 (2006) (noting that a K-9 dog's handler who intentionally directs or instructs the K-9 to scan a vehicle's interior constitutes a search in violation of the Fourth Amendment); *accord, e.g.*, *United States v. Watson*, 783 F. Supp. 258, 265 (E.D. Va.

---

[4] To invoke the plain view doctrine, the police must satisfy the following requirements: "(1) the police officer's initial intrusion must be lawful or the officer must otherwise properly be in a position from which he or she can view a particular area; (2) the incriminating character of the evidence must be 'immediately apparent;' and (3) the officer must have a lawful right of access to the object itself." *Wengert v. State*, 364 Md. 76, 88-89, 771 A.2d 389, 396 (2001).

1992); *United States v. Winningham*, 140 F.3d 1328, 1331 (10th Cir. 1998); *State v. Freel*, 32 P.3d 1219, 1225 (Kan. App. 2001).

Thus, an officer must establish probable cause, or provide another constitutional justification, before conducting the warrantless search of a vehicle. *See Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280 (1925) (holding that officers may conduct a warrantless search of a vehicle provided that they first establish probable cause to suspect the presence of illegality therein); *Byndloss*, 391 Md. at 481-82, 893 A.2d at 1130-32 (noting that where officers have probable cause to believe that a vehicle contains contraband, the search is not subject to the Fourth Amendment warrant requirement).

### ii. Probable cause was required before Deputy Atkins inserted his head into Petitioner's vehicle

Applying these general principles of Fourth Amendment jurisprudence to the case at bar, we hold that Deputy Atkins conducted a search within the meaning of the Fourth Amendment when he inserted his head into the constitutionally-protected area of Petitioner's vehicle, without the benefit of a warrant or other justification.[5] *Class*, 475 U.S. at 108, 114-15, 106 S.Ct. at 966. However, this conclusion does not end our analysis. The Fourth Amendment also requires that "searches and seizures be reasonable." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S.Ct. 3304, 3308 (1985). "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Id.* (citation omitted).

---

[5] The State does not dispute that Deputy Atkins' actions may have constituted a search.

- 13 -

Therefore, "[t]he permissibility of a particular law enforcement practice is judged by 'balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" *Id.* (citations omitted); *Wilson v. State*, 409 Md. 415, 427, 975 A.2d 877, 884 (2009) ("In assessing whether a search or seizure was reasonable, [t]he touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.") (internal quotations and citations omitted).

There is a split of authority regarding whether an officer's physical intrusion into a vehicle's interior, in the absence of probable cause or the existence of a warrant, constitutes an unreasonable "search" that is violative of the Fourth Amendment. On one hand, courts have held that this intentional act is unreasonable, in the absence of probable cause, reasonable suspicion, or other justification. In *United States v. Montes-Ramos*, 347 Fed. Appx. 383, 385, 389-90 (10th Cir. 2009), the Tenth Circuit held that although the officer's initial stop of the appellant's vehicle was constitutional, the officer conducted an unlawful search when he placed his head into the front passenger-side door by approximately two inches, at which point he smelled marijuana, to further investigate his "hunch" that the appellant was transporting drugs.

Similarly, in *Davis v. State*, 8 S.W.3d 36, 38-39 (Ark. Ct. App. 1999), an Arkansas appellate court held that despite the legality of the initial stop, the officer subsequently conducted an unlawful search. The court explained that the officer "had no suspicion, reasonable or otherwise, that appellant's vehicle contained contraband until after he 'stuck [his] head' into appellant's truck and smelled marijuana." *Id*. In *Podgurski*, 436 N.E.2d at

- 14 -

151-53, the Supreme Judicial Court of Massachusetts similarly held that an officer's conduct constituted an unlawful search. While responding to a tip of "suspicious activity" occurring in a stationary cargo van, the officer approached the van and placed his head into the windowless, rear interior of the van. *Id*. at 151. The court held that the officer's observation of illegal activity did not occur until he "stuck his head inside" the rear window, reasoning that "[p]rior to entering the van, the officer made no attempt to question or communicate with the defendants in any way," and that the record did not "disclose that he was warranted in taking reasonable precautions for his safety." *Id*. at 152-53.

An Oregon appellate court in *Hendricks*, 948 P.2d 740, reached a similar conclusion. While facilitating a traffic stop for a speeding violation, the state trooper inserted his head into the driver-side window of the defendant's truck. *Id*. at 741. The court observed that it was "undisputed that [the state trooper] did not suspect [the] defendant of engaging in criminal conduct" prior to his physical intrusion. *Id*. at 743. In reversing the denial of the defendant's motion to suppress, the court held that the state trooper "was allowed to observe and smell what he otherwise would not have been able to observe or smell from a lawful vantage point[,]" which constituted a search in violation of the Fourth Amendment. *Id*.

Conversely, other courts have focused on the totality of the circumstances surrounding an officer's physical intrusion into a vehicle's interior, and held that this intentional act was reasonable. In *United States v. Pierre*, 958 F.2d 1304, 1307 (5th Cir. 1992), the Fifth Circuit held that a border patrol agent's act of "duck[ing] [his] head in [the window] to get a clear view of the back seat" during a routine checkpoint stop, was not a

- 15 -

search violative of the Fourth Amendment. After the patrol agent's physical intrusion, he detected the odor of freshly burned marijuana. *Id*. The court reasoned that the patrol agent's actions were justified because passengers of vehicles at fixed checkpoints near state borders "do not have a reasonable expectation of privacy in not being stopped and questioned about their citizenship." *Id*. at 1309. The court further reasoned that the physical features of the two-door, tinted window vehicle made it difficult for the patrol agent to communicate with the backseat passenger, which posed a threat to the agent's safety. *Id*. at 1309-10.

Similarly in *United States v. Winters*, 221 F.3d 1039 (8th Cir. 2000), the Eighth Circuit shared a similar concern for an officer's safety during an investigatory stop. After observing the defendant speeding, a state trooper activated his emergency equipment and pursued. *Id*. at 1040. The defendant continued driving for several hundred yards, before turning into a nearby driveway and driving into a snow bank. *Id*. Upon exiting his vehicle, the defendant started to walk away until the state trooper instructed him to stop. *Id*. The state trooper subsequently asked the defendant for his license, registration, and proof of insurance, at which point, the defendant informed the trooper that his license had been suspended. *Id*.

Once he returned to his vehicle, the defendant searched for his registration and insurance, when his hands seemed to "disappear" under the driver's seat. *Id*. After performing a similar search on the passenger side, the defendant informed the state trooper that he did not have car insurance. *Id*. As the defendant continued to search for other documentation, the trooper observed that the defendant had access to a baseball bat on the

- 16 -

passenger side of his vehicle. *Id*. While cautioning the defendant against reaching under the passenger seat, the state trooper placed "his head inside the open driver's-side door" and detected the odor of raw marijuana. *Id*. Based on these facts, the court held that there was a "legitimate concern for safety," in which "an officer can take steps reasonably necessary to protect his personal safety and to maintain the status quo. . . ." during an investigatory stop. *Id*. at 1041-42.

A Washington appellate court in *Larson*, 946 P.2d 1212, addressed a similar factual scenario. In *Larson*, a state trooper who observed the defendant speeding on a freeway, activated his emergency equipment and began to pursue the defendant's truck. *Id*. at 1213. The defendant failed to pull over or slow down, but the state trooper observed the defendant "leaning forward and making movements toward the floorboard of his truck." *Id*. After traveling some distance, the defendant exited the freeway and stopped in a hotel parking lot. *Id*. Once stopped, the defendant exited his truck and the state trooper patted his outer clothing. *Id*. Thereafter, the state trooper "stuck his head in the cab of the truck through the open door to visually inspect the area around the driver's seat." *Id*.

The court held that the state trooper's search was reasonable under the circumstances because it was necessary for his safety. *Id*. at 1215-16. The court reasoned, "the purpose of such a search [was] to discover whether the suspect's furtive gesture hid a weapon[]" and thus, "[t]he scope of the search . . . [was] limited to the area of the vehicle defined by the suspicious movements observed by the officer." *Id*. (internal quotations and citation omitted) (footnote omitted).

Likewise, in *State v. Aubin*, 622 A.2d 444, 445-46 (1993), the Supreme Court of Rhode Island held that an officer's leaning into the defendant's vehicle where he subsequently discovered a gun between the defendant's feet, was not violative of the Fourth Amendment. The court explained that the officer's conduct "was at most a mere inconvenience to defendant. . . . " in what the court described as "an inherently dangerous situation[,]" given that the defendant's vehicle was suspiciously parked on a sidewalk around 3:15 a.m. and the defendant's companion fled the scene when officers approached the vehicle. *Id*. at 446.

The circumstances presented in the case at bar are readily distinguishable. For reasons we shall explain, we hold that Deputy Atkins' search exceeded the scope of the limited investigatory purposes of the traffic stop. *See, e.g.*, *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573 (1985) (noting that the dual inquiry for evaluating the reasonableness of an investigative stop involves examination of "'whether the officer's action was justified at its inception, and *whether it was reasonably related in scope to the circumstances which justified the interference in the first place*.'") (emphasis added and citation omitted); *Byndloss*, 391 Md. at 480, 893 A.2d at 1130 ("[T]he detention of a person 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'") (citation omitted).

Petitioner directs this Court's attention to the Oregon appellate court's opinion in *Hendricks*, 948 P.2d 740, discussed *supra,* for the proposition that an officer's warrantless physical intrusion into a vehicle during a traffic stop constitutes an unlawful search that warrants suppression of seized evidence. The court's reasonableness analysis is

- 18 -

instructive. In *Hendricks*, the defendant appealed a conviction for driving under the influence of intoxicants (DUII), following a trial court's denial of his motion to suppress evidence obtained during a traffic stop. *Id*. at 741. The appellate court recited the following relevant facts:

> [The state trooper] stopped defendant for a lane violation. He ran a record check on defendant and discovered that defendant had a number of prior DUII violations. He wrote out the citation for the lane violation and then leaned into the open driver-side window of defendant's truck to deliver the citation to defendant. When he inserted his head into the truck, [he] smelled a strong odor of alcohol on defendant's breath. He then looked at defendant more carefully and observed that defendant's eyes were bloodshot and watery. [He] asked defendant how much he had to drink that day, and defendant responded that he had four beers. [He] then asked defendant if he could look into defendant's eyes. Defendant agreed, and [the state trooper] conducted a Horizontal Gaze Nystagmus test. [The state trooper] requested that defendant step out of the truck to perform other field sobriety tests, and defendant agreed. At the conclusion of the tests, [he] arrested defendant for DUII.

*Id*. Before trial, the defendant moved to suppress the results of the field sobriety tests, asserting that they were the fruits of an illegal search because the state trooper unlawfully inserted his head into his truck. *Id*. The court denied the motion, reasoning that under the totality of the circumstances, "[the state trooper] leaning his head" into the vehicle did not constitute a search. *Id*. The court gave credence to the state trooper's testimony that he was "handing [defendant] a ticket, leaned in to give it to him, and explain. And while there, just stumbled upon these other things." *Id*. On appeal, the defendant argued that the trial court erred in denying the motion to suppress, because the state trooper conducted a search at a point where he "lacked reasonable suspicion to investigate anything other than the lane violation for which defendant was stopped[.]" *Id*.

The appellate court agreed, concluding that because the defendant had a clear protected privacy interest in his truck, the state trooper's actions constituted an unlawful intrusion that "allowed [him] to observe and smell what he otherwise would not have been able to observe or smell from a lawful vantage point." *Id*. at 743. The court further explained, "because it is undisputed that [the state trooper] did not suspect defendant of engaging in criminal conduct before [placing his head into the truck], it necessarily follows that [he] exceeded the scope of the traffic stop." *Id*. As a result, the court reversed the denial of the defendant's suppression motion. *Id*.

We are also persuaded by the Fifth Circuit's reasonableness analysis in *Ryles*, 988 F.2d 13, *supra*. In *Ryles*, 988 F.2d at 14, a state trooper noticed a van changing lanes on a rural highway without signaling. As a result of the traffic violation, the state trooper ordered the van to pull onto the highway shoulder, at which point, Ryles immediately exited the van and approached the state trooper. *Id*. Ryles admitted that he was the driver of the van, in which there were passengers, that he did not have a driver's license, and that he was unaware whether the van was insured. *Id*. During this exchange, the state trooper detected the odor of alcohol on Ryles' breath. *Id*. After asking Ryles whether any of the passengers in the van possessed a driver's license, the trooper approached the driver's door and immediately smelled burnt marijuana. *Id*. A subsequent warrantless search of the van yielded cocaine and a weapon, which led to Ryles' conviction and sentence. *Id*.

On appeal, the parties disputed whether the state trooper opened the driver's side door or inserted his head into an open window before he detected the odor of marijuana. *Id*. at 15. During the suppression hearing, the lower court failed to render a finding

- 20 -

regarding whether the trooper detected the odor before he entered the van and the trooper could not recall whether he placed his head into the van. *Id*. & n.4. A passenger in the vehicle testified that the state trooper opened the van's door and stuck his torso inside. *Id*. at n.4.

The Fifth Circuit held that the state trooper's actions constituted a "search," regardless of when he detected the odor of marijuana, because the state trooper "intruded inside a space that, under most circumstances, is protected by a legitimate expectation of privacy." *Id*. Nonetheless, the court affirmed Ryles' conviction and sentence, reasoning that the search was reasonable under the circumstances. The court observed:

> In the particular factual context of the instant case, we do not believe that [the state trooper] would have been unreasonable either in placing his head inside the interior of the van through an open window or in opening the driver's door and placing his torso inside, even assuming he did not smell marijuana before the intrusion. *Our conclusion is based on the reason behind [state trooper's] actions. After pulling over a van in the wee hours of the morning on a relatively deserted Texas highway, Washington was immediately approached by the driver, who smelled of alcohol and admitted that he had no driver's license. Even though Ryles was not intoxicated, he still could not lawfully drive the van.* At . . . Ryles' own suggestion, [the state trooper] approached the van to inquire whether anyone else in the van was licensed and could drive the vehicle away. *Although he did not say so at the suppression hearing, we believe that [the state trooper] would have considered it necessary to determine whether the passenger who would ultimately be driving the van was impaired by alcohol-since, after all, Ryles had alcohol on his breath. Even assuming that he walked up to the driver's door and opened it without knocking, [the state trooper] would only have been attempting to assure that the van would be driven safely. We can hardly say that this would have been unreasonable.*

*Id*. at 15 (emphasis added and citation omitted).

Both *Hendricks* and *Ryles* support our conclusion that Deputy Atkins' search was unreasonable if he did not detect the odor of marijuana or observe suspicious behavior prior

to inserting his head into the vehicle's passenger window. Similar to *Hendricks*, but distinguishable from *Ryles*, the record does not reflect the existence of any suspicious activity beyond the speeding violation. The record does not reflect the existence of exigent circumstances, where Deputy Atkins feared for his safety or the safety of others, suspected flight, destruction of evidence, or similar circumstances. Petitioner did not delay in stopping his vehicle or attempted to maneuver a detour. *Cf. Winters*, 221 F.3d at 1040; *Larson*, 946 P.2d at 1213. He did not engage in furtive movement giving rise to reasonable suspicion. *Cf. Pierre*, 958 F.2d at 1310; *Larson*, 946 P.2d at 1213. He did not abscond after the stop, have fleeing passengers, or demonstrate any other suspicious behavior. *Cf. United States v. Martinez-Miramontes*, 494 F.2d 808, 809-10 (9th Cir. 1974); *Winters*, 221 F.3d at 1040; *Aubin*, 622 A.2d at 446.

In contrast, the record before us only reveals that Petitioner was stopped for a routine traffic violation. Therefore, in the absence of a factual finding that Deputy Atkins detected the odor before his head crossed the passenger window, Deputy Atkins did not have probable cause or reasonable articulable suspicion that Petitioner was in possession of a controlled dangerous substance.

We also observe that other exceptions to the warrant requirement are inapplicable under the circumstances presented. The automobile exception permits an officer to conduct a warrantless search of a vehicle, that exception is triggered after an officer establishes probable cause to believe that a vehicle contains contraband or evidence of criminal activity. *Carroll*, 267 U.S. 132, *supra*. Likewise, "odor is a valid consideration" in establishing probable cause and may constitute an exception to the warrant requirement

- 22 -

under the plain view doctrine.[6] *Bailey v. State*, 412 Md. 349, 376, 987 A.2d 72, 88 (2010). In the case at bar, the absence of a factual finding that Deputy Atkins detected the odor of marijuana before inserting his head into the vehicle negates each of these exceptions because 1) an officer must establish probable cause prior to commencing a search, and 2) the plain view doctrine requires that an officer be lawfully within the area where he or she detects the odor of contraband. *See Wengert v. State*, 364 Md. 76, 88, 771 A.2d 389, 396 (2001) (invoking the plain view doctrine first requires that the police officer's initial intrusion was lawful or the officer was otherwise lawfully "in a position from which he or she can view a particular area . . .").

### B. Where the evidence regarding Deputy Atkins' detection of marijuana was "not clear", the exclusionary rule must apply

In denying Petitioner's suppression motion, the circuit court made the following observations:

> The testimony of Deputy Atkins was that he didn't recall whether his head went in the vehicle or not. It was very possible [Deputy Atkins'] head would have broken the [pane] and it was at some point, it was not clear whether it was when his head was inside or when the window was rolled down, he- smelled what he believed based on his training and experience smelled like marijuana. But he also testified that it dissipated rather quickly.

The warrantless search in the case at bar was only lawful if Deputy Atkins detected the odor of marijuana *before* inserting his head into the vehicle, and the aforementioned statements accurately reflect the ambiguity of the evidence on this subject. This ambiguity

---

[6] The parties do not dispute that the 1.6 grams of marijuana found in Petitioner's vehicle was not in plain view prior to its discovery.

was paramount at the suppression hearing because, where evidence of a lawful warrantless search is "inconclusive[,]" the defendant must prevail.[7] *Epps v. State*, 193 Md. App. 687, 704, 1 A.3d 488, 498 (2010) (citation omitted). Therefore, where the evidence of Deputy Atkins' detection of marijuana odor was "not clear[,]" the State failed to meet its burden of showing that Deputy Atkins' warrantless search was lawful. *See Coolidge*, 403 U.S. at 455, 91 S.Ct. at 2032; *Southern*, 371 Md. at 105, 807 A.2d at 20.

Since the State did not satisfy its burden that Deputy Atkins discovered the 1.6 grams of marijuana by virtue of a lawful search, the seizure was subject to the exclusionary rule. *Cf. Wengert*, 364 Md. at 96, 771 A.2d at 401 ("Because we hold that the initial search was lawful, there was no fruit of any poisonous tree. All of the items were lawfully

---

[7] The circuit court's failure to appreciate the constitutional significance of Deputy Atkins' conduct is revealed in the following exchange between the court and defense counsel:

> [DEFENSE COUNSEL]: Now again, starting from the beginning, Your Honor, this did start off as a traffic stop. I'll defer to the [c]ourt as to whether there's enough information to give them grounds to stop the car, but it, they, it at least comes across as a, a standard speeding stop. But as soon as, as [Deputy Atkins] approaches the car, I think that's where, where we get an issue. It's pretty, he did not remember. He was very honest. He did not remember what happened. But it's clear from the video that as he comes in, puts his arms in and sticks his head in and maybe that's 'cause he feels he needs to talk to him. But I mean every stop I've ever been part of or, or seen over the course of my career you can step, even on the passenger side, not stick your head in and, and do whatever interaction needs to be done with the driver. In this case [Deputy Atkins] clearly crossed the [pane] through the window and—
>
> THE COURT: *And the significance of that is what?*

(emphasis added).

seized."). The exclusionary rule provides that "evidence seized during an unlawful search could not constitute proof against the victim of the search." *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 416 (1963); *Kelly v. State*, 436 Md. 406, 421, 82 A.3d 205, 213 (2013) ("The remedy for an unlawful search is the suppression of evidence obtained as a result of that search. . . . This remedy is known as the 'exclusionary rule.'"). The exclusionary prohibition is not only limited to direct evidence, but also extends to indirect products of unlawful invasions. *Wong Sun*, 371 U.S. at 484, 83 S.Ct at 416.

Therefore, the circuit court erred in denying Petitioner's suppression motion because without satisfying its burden of proof, the State did not establish that the evidence was admissible against Petitioner. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691 (1961) ("We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."); *King v. State*, 434 Md. 472, 490, 76 A.3d 1035, 1046 (2013) ("[T]he application of [the exclusionary rule] [prohibiting the use of illegally obtained evidence] is appropriate when the Constitution or a statute requires it.").

**II.    The Court of Special Appeals did not apply the appropriate standard of review**

The Court of Special Appeals relied upon the supplemental rule of interpretation to draw the inference that Deputy Atkins detected the odor of marijuana before his head crossed the window's threshold.

Petitioner asserts that the Court of Special Appeals "applied an incorrect standard of review to the [circuit court's] factual findings and legal conclusions by affirming the denial of Petitioner's suppression motion[.]" Specifically, Petitioner argues that the

- 25 -

intermediate appellate court affirmed the denial of his suppression motion based upon "an inference" that Deputy Atkins detected the smell of marijuana before inserting his head into the passenger window, which was "inconsistent with the [circuit] court's factual finding."

Conversely, the State asserts that the supplemental rule of interpretation controls and resolves the ambiguous or incomplete fact-finding. Thus, in applying the rule to the case at bar, and when construed in the light most favorable to the prevailing party, the State asserts that "the record supports a reasonable inference" that Deputy Atkins detected the odor of marijuana "before his head entered the window [of Petitioner's vehicle]." We disagree.

> To guide our analysis, we reiterate the applicable standard of review:
>
> When we review a [circuit] court's grant or denial of a motion to suppress evidence alleged to have been seized in contravention of the Fourth Amendment, we view the evidence adduced at the suppression hearing, and the inferences fairly [deduced] therefrom, in the light most favorable to the party that prevailed on the motion. We defer to the [circuit] court's fact-finding at the suppression hearing, unless the [circuit] court's findings were clearly erroneous. Nevertheless, we review the ultimate question of constitutionality *[de novo]* and must 'make our own independent constitutional appraisal by reviewing the law and applying it to the facts of the case.'

*Corbin*, 428 Md. at 497-98, 52 A.3d at 951 (citations omitted).

Contrary to these well-established principles, the Court of Special Appeals affirmed the denial of Petitioner's suppression motion by applying the supplemental rule of

interpretation.[8] The intermediate appellate court indicated that "the [circuit] court's statement reflected the ambiguous nature of the evidence[,]" and, as a result, the court interpreted the alleged ambiguity "to mean that Deputy Atkins detected the tell-tale odor of marijuana before he placed his head in the vehicle's window." In reliance on this inference, the court construed the evidence in the light most favorable to the State, and held that "there was no warrantless search of [Petitioner's] vehicle."

However, the Court of Special Appeals' inference that Deputy Atkins detected the odor of marijuana prior to inserting his head into the passenger window of Petitioner's vehicle, was inconsistent with the evidence of record, specifically, Deputy Atkins' testimony and the circuit court's "not clear" statement. Deputy Atkins testified that he could not recall the exact moment he detected the odor of marijuana upon his initial contact. Additionally, whether Deputy Atkins detected the odor prior to inserting his head into the passenger window was critical.

Maryland appellate courts generally reverse a lower court's judgment where the factual findings and legal conclusions are inconsistent. *See, e.g.*, *Cartnail v. State*, 359 Md. 272, 289-90, 753 A.2d 519, 528-29 (2000) (reversing the Court of Special Appeals' judgment that an officer had reasonable suspicion to conduct a *Terry* stop because the

---

[8] The supplemental rule of interpretation is generally employed by the Court of Special Appeals to resolve fact-finding ambiguities and fill fact-finding gaps in cases where a trial-level judge's fact-finding was either ambiguous, incomplete, or non-existent. *See Morris v. State*, 153 Md. App. 480, 837 A.2d 248 (2003). The supplemental rule of interpretation has not been formally adopted by this Court, and we decline to do so in this case.

- 27 -

record of the suppression hearing addressing the critical factor of the description of the petitioner was not sufficiently particular to uphold that judgment); *Wilson*, 409 Md. at 442, 975 A.2d at 892 (reversing the judgment of the Court of Special Appeals, in part, because the evidence regarding the officers decision to "place [the] petitioner in handcuffs and to transport him to the hospital in his police cruiser[,] was not carefully tailored to the underlying justification for the seizure[,]" despite the court's holding that the seizure was justified under the community caretaking function/emergency aid exception); *Goodwin v. Lumbermens Mut. Cas. Co.*, 199 Md. 121, 129-30, 85 A.2d 759, 763 (1952) (declining to sustain the circuit court's conclusion in favor of the prevailing party, *inter alia*, "in the absence of any specific finding of fact by the [circuit] court."); *Belote v. State*, 199 Md. App. 46, 60, 20 A.3d 143, 151 (2011) (reversing the appellant's conviction for possession with intent to distribute narcotics, *inter alia*, because "[e]ven in a light most favorable to the State, [the] facts d[id] not support the State's proffered inferences and legal conclusion . . . that officers established "probable cause to suspect [the] appellant of criminal enterprise.").

The Court of Special Appeals was incorrect in applying the supplemental rule of interpretation to resolve the alleged ambiguity and draw inferences unsupported by the evidence. *See, e.g.*, *Goodwin*, 199 Md. at 129-30, 85 A.2d at 763 ("[I]f there is no factual statement or conclusion, there is no reason for the appellate court to examine the record with an evidentiary slant in favor of the [prevailing party] in order to sustain a non-existent presumption."). Accordingly, we shall reverse.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY. COSTS TO BE PAID BY FREDERICK COUNTY.**